UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SILVIA P.,[1]<br>     Plaintiff<br><br>     v.<br><br>MARTIN J. O'MALLEY, Commissioner of the Social Security Administration,[2]<br>     Defendant | No. 23 CV 1450<br><br>Judge Jeremy C. Daniel |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Silvia P. appeals the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits. The plaintiff has moved for summary judgment under 42 U.S.C. § 405(g).[3] As detailed below, the plaintiff's motion for summary judgment is granted and the decision of the Commissioner is reversed and remanded for further proceedings consistent with this Memorandum Opinion.

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to the plaintiff only by her first name and the first initial of her last name.

[2] Martin J. O'Malley is substituted for Kilolo Kijakazi pursuant to Federal Rule of Civil Procedure 25(d)(1).

[3] The plaintiff filed a memorandum of law (R. 8) but did not file a separate motion for summary judgment. At the time that this appeal was briefed, Northern District of Illinois Local Rule 16.4 permitted plaintiffs in Social Security cases to simply file a brief in support of reversing or remanding the Commissioner's decision within sixty days of the filing of the administrative record, with no motion required. This rule has since been abrogated. *See* United States District Court for the Northern District of Illinois, General Order No. 23-0039 (Oct. 3, 2023), https://perma.cc/S3L2-JYDM (archived July 10, 2024). To the extent required by the Local Rules, the Court construes the plaintiff's memorandum as a motion for summary judgment. *Cf. Traversa v. Berryhill*, No. 17 C 2115, 2018 WL 3352660, at *1 (N.D. Ill. July 9, 2018).

# BACKGROUND

The plaintiff is a 57-year-old woman who was previously employed as an electric heat assembler. (R. 7-1 (Administrative Record, hereinafter "AR") at 27, 303, 364.)[4] Her alleged impairments include diabetes mellitus, degenerative joint disease of the right knee, psoriatic arthritis, and obesity. (*Id.* at 364.) The plaintiff has not engaged in substantial gainful activity since her alleged onset date of March 16, 2020. (*Id.* at 23.)

## I. PROCEDURAL HISTORY

On May 11, 2020, the plaintiff applied for disability insurance benefits with the Social Security Administration. (*Id.* at 1.) The Commissioner denied her initial application on October 2, 2020. (*Id.* at 82–87.) The plaintiff filed a request for reconsideration, which the Commissioner denied on December 18, 2020. (*Id.* at 90–92.) She subsequently requested a hearing and appeared telephonically before an Administrative Law Judge ("ALJ") on May 2, 2022. (*Id.* at 35–36.) During the hearing, both the plaintiff and a vocational expert testified. (*See id.*) The plaintiff was assisted by a Spanish interpreter. (*Id.* at 21.) Following the hearing, the ALJ issued a written decision denying the plaintiff's benefits claim. (*Id.* at 21–29.) The plaintiff's request for review of this decision was denied by the Appeals Council. (*Id.* at 5–7.) The Commissioner's decision is now ripe for judicial review. *Sims v. Apfel*, 530 U.S. 103, 107 (2000).

---

[4] For citation purposes, the Court cites to the Administrative Record's corresponding Bates numbers. As for other CM/ECF filings, the Court cites to the page number(s) set forth in the document's CM/ECF header unless citing to a particular paragraph or other page designation is more appropriate.

## II. THE ALJ'S DECISION

In his written decision, the ALJ analyzed the plaintiff's benefits claim using the Social Security Administration's five-step sequential evaluation framework. *See* 20 C.F.R. § 404.1520. This framework requires an ALJ to consider:

> (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner; (4) whether the claimant can perform [her] past relevant work; and (5) whether the claimant is capable of performing work in the national economy.

*Hess v. O'Malley*, 92 F.4th 671, 677 (7th Cir. 2024) (citing 20 C.F.R. § 404.1520) (cleaned up). At step one, the ALJ found that the plaintiff was unemployed because she satisfied the Social Security Act's insured status requirements through December 31, 2020 and had not engaged in substantial gainful activity since March 16, 2020. (AR at 27.) At step two, the ALJ found that the plaintiff had four severe impairments: diabetes mellitus, degenerative joint disease of the right knee, psoriatic arthritis, and obesity. (*Id.*) At step three, the ALJ found that the plaintiff did not have an impairment or a combination of impairments that would automatically qualify as a disability under applicable regulations. (*Id.* at 27–28.)

On step four, the ALJ assessed whether the plaintiff could perform her past relevant work by evaluating her residual functional capacity, or "RFC." RFC is "an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004) (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ found that the plaintiff had the RFC to perform "medium work," *i.e.* "lifting no more than 50 pounds at a time with frequent lifting or

3

carrying of objects weighing up to 25 pounds." 20 C.F.R. 404.1567(c). The ALJ qualified this finding, however, and stated that the plaintiff could not perform certain tasks, such as occasionally climbing ramps and stairs, ladders, ropes and scaffolds or frequently stooping and crouching. (AR at 29.) He found that the plaintiff could never crawl but could occasionally push and pull with her right lower extremity and operate foot controls. (*Id.*) He also found that the plaintiff could perform "frequent bilateral handling/fingering." (*Id.*)

In evaluating the plaintiff's RFC, the ALJ considered the plaintiff's medical records, as well as expert opinions offered by state agency medical consultants and the plaintiff's treating physician, Dr. David Mael. (*Id.* at 27.) The ALJ credited the state agency consultants' opinions because they were "supported by the overall conservative treatment of record." (*Id.*) By contrast, he found that Dr. Mael's opinion was "not very persuasive" since it was not supported by "records showing that the plaintiff improved with medication." (*Id.*) He also noted that Dr. Mael's opinion was "not consistent" with "clinical findings" indicating "normal range of motion, normal sensation[,] and no mention of any assistive device usage." (*Id.*)

The ALJ also assessed the plaintiff's subjective claims of pain in connection with the RFC determination. (*Id.* at 25.) In doing so, the ALJ evaluated the plaintiff's credibility and found that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms" were "not entirely consistent with the medical evidence and the other evidence in the record." (*Id.*) The ALJ pointed out that the record showed earnings of $1,895 in the third quarter of 2020, despite the plaintiff's

4

testimony that she last worked on March 17, 2020. (*Id.*) He also found that "the records suggest that the claimant stopped working due to the COVID-19 pandemic and not due to an inability to perform the work." (*Id.*)

Finally, on step five of the assessment framework, the ALJ found that the plaintiff could perform her past relevant work as an electric heat assembler because her prior job as an assembly line worker did not require the performance of activities precluded by her RFC. (*Id.* at 27–28.) The ALJ relied on the vocational expert's testimony to conclude that there were multiple jobs that the plaintiff could perform in the national economy considering her age, education, work experience, and RFC. (*Id.* at 32.) Based on the foregoing, the ALJ concluded that the plaintiff had not been under a disability, as defined in the Social Security Act, from March 16, 2020 through the date of the ALJ's written decision. (*Id.* at 33.) The plaintiff now challenges that determination.

## STANDARD OF REVIEW

Section 405(g) of the Social Security Act permits a federal district court to review the Commissioner's decision on an application for benefits. 42 U.S.C. § 405(g). In conducting this review, the "findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." *Id*. The Court's role is limited to deciding whether the final decision is based upon substantial evidence or resulted from an error of law. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018); *Hess*, 92 F.4th at 676. The Court must consider all evidence in the administrative record, including medical records submitted up to the date of the ALJ's decision. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). However, the Court may not "reweigh

5

the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052–53 (7th Cir. 2024).

Substantial evidence is "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Stated differently, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). This standard is satisfied when the ALJ "minimally articulate[s] his or her justification for rejecting or accepting specific evidence of a disability." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). Nonetheless, "even under this deferential standard of review," an ALJ "must provide a logical bridge between the evidence and [his] conclusions." *Crowell v. Kijakazi*, 72 F.4th 810, 814 (7th Cir. 2023) (citations omitted). The ALJ's factual findings must be affirmed even if "reasonable minds could differ" or an alternative position is also supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). But his conclusions of law are not entitled to deference. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The court "will reverse only if the record compels a contrary result." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (internal quotation marks and citation omitted).

## ANALYSIS

The plaintiff's argument on appeal is limited to challenging the ALJ's RFC determination. (*See generally* R. 8.) To prevail, "[i]t is not enough" for the plaintiff "to criticize the ALJ's decision about her functional capacity to work." *Morales v.*

*O'Malley*, 103 F.4th 469, 470 (7th Cir. 2024). "She must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." *Id.*; *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

### I. ASSESSMENT OF MEDICAL OPINIONS

The plaintiff's primary argument is that the ALJ failed to properly credit the report of her treating physician, Dr. Mael. (R. 8 at 5, 11–13.) Dr. Mael issued an opinion on December 7, 2020, finding that the plaintiff's impairments would interfere with simple work tasks; that she could sit for only two hours and stand for less than two hours; that she would need up to three unscheduled work breaks per week; that she could rarely lift up to ten pounds; that she had limited use of her hands; and that she would need to be absent from work about two days per month. (*See* AR at 523–525.) Dr. Mael also issued a treating source statement on June 11, 2021, explaining that the plaintiff's "diagnosis of psoriatic arthritis has affected many areas," including "difficulties with arthritis in the knee;" and although she "has improved somewhat with medication . . . deformities remain." (*Id.* at 526.)

The ALJ found Dr. Mael's opinion "not very persuasive" and chose to place more weight on the opinions of two non-examining state agency consultants: Dr. Bonnie Lammers and Dr. Bharati Jhaveri. (*Id.* at 27.) Dr. Lammers examined the evidence on October 1, 2020, and opined that a medium work RFC assessment was appropriate because the plaintiff's treatment record revealed only moderate symptoms. (*Id.* at 57–63.) Similarly, Dr. Jhaveri reviewed the evidence on December 14, 2020, in connection with the plaintiff's request for reconsideration and found that

7

the initial RFC determination was appropriate because examinations from 2018 through July 2020 showed essentially normal symptoms. (*Id.* at 65–75.)

The ALJ's decision to credit the state agency consultants' opinion over Dr. Mael was not impermissible *per se. See Frank S. v. Kijakazi*, No. 20 C 3429, 2022 WL 832660, at *3 (N.D. Ill. Mar. 21, 2022). Indeed, "the determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)). Moreover, because the plaintiff filed her application for disability benefits after March 26, 2017—following prospective abrogation of the "treating physician" rule—the ALJ was not obligated to give Dr. Mael's testimony "controlling weight" simply because he was the plaintiff's primary doctor. C.F.R. § 404.1520c(a); *Bakke v. Kijakazi*, 62 F.4th 1061, 1067, 1069 n.4 (7th Cir. 2023) (discussing abrogation of the "treating physician rule").

That said, even though an ALJ is not bound to adopt a treating physician's testimony, he must rely on expert opinions to interpret medical findings and cannot determine the significance of such findings himself. *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018); *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). Nor may he "selectively cite only evidence that supports his conclusion." *Bakke*, 62 F.4th at 1067. Remand is required if an ALJ "succumb[s] to the temptation to play doctor" by making his own independent medical findings. *Deborah M.*, 994 F.3d at 790 (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Israel v. Colvin*, 840 F.3d 432, 439 (7th Cir. 2016).

The plaintiff argues that the ALJ's decision to rely on the opinions of state agency medical consultants was erroneous because the consultants did not review all the medical evidence in the record as of the date of the Commissioner's decision. The last agency review of the medical evidence was performed by Dr. Jhaveri on December 14, 2020, in response to the plaintiff's request for reconsideration and over a year prior to the administrative hearing. (R. 8 at 6–8.) Between the last agency examination and the administrative hearing, a substantial amount of evidence emerged. Notably, the plaintiff had at least six follow up examinations in December 2020,[5] May, June, September, and October of 2021, as well as February 2022. (*See* AR at 26.) During several of these visits, the plaintiff complained of arthritis in her knee and worsening pain. (*See id.* at 556, 583, 612, 645.) Most significantly, a June 2021 radiology report indicated that X-rays of the plaintiff's knees "showed severe arthritic changes of the right knee joint and patellofemoral joint with significant marginal spur formation," as well as "[s]ignificant narrowing of the medial compartment of the right knee joint on the standing view." (*Id.* at 677–78.) Following this report, Dr. Mael discussed the possibility of knee surgery with the plaintiff. (*See id.* at 612, 644.)

An ALJ may err by relying on outdated agency reports if the reports fail to capture "later evidence containing new, significant medical diagnoses [that] reasonably could have changed the reviewing physician's opinion." *Moreno v.*

---

[5] This exam took place on December 7, 2020, one week prior to Dr. Jhaveri's review of the reconsideration-level evidence. However, the list of evidence referenced in Dr. Jhaveri's opinion indicates that Dr. Jhaveri did not consider this visit and only reviewed treatment records through July 2020. (AR at 73.)

*Berryhill,* 882 F.3d 722, 728 (7th Cir. 2018); *Stage v. Colvin,* 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where state agency physician did not have access to later medical evidence containing "significant, new, and potentially decisive findings"); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding where ALJ relied on an outdated non-examining physicians' report and "failed to submit [a new] MRI to medical scrutiny, as she should have done since it was new and potentially decisive medical evidence."); *Kemplen v. Saul,* 844 F. App'x 883, 887 (7th Cir. 2021) (non-precedential opinion) ("Although a close question, we conclude that the ALJ erred by not soliciting an updated medical opinion interpreting [the plaintiff's] July and September 2017 X-rays.").

True, "[a]n ALJ does not commit reversable error just because he or she relied on non-examining consultative opinions that did not scrutinize certain medical evidence in the record." *Mary P. v. Berryhill*, No. 17 C 6545, 2019 WL 2491640, at *7 (N.D. Ill. June 14, 2019) (citing *Keys v. Berryhill*, 679 F. App'x 477, 480-81 (7th Cir. 2017) (non-precedential opinion.)). Rather, it is only where new medical findings could "reasonably change the reviewing physician's opinion" that an obligation to supplement the record with additional medical opinion testimony arises. *Stage*, 812 F.3d at 1125; *Shelia M. v. Saul*, No. 20 C 664, 2021 WL 1784775, at *8 (N.D. Ill. May 5, 2021).

Here, the findings in the June 2021 radiology report could have "reasonably changed" Dr. Lammers' and Dr. Jhaveri's initial opinions. The report describes "severe arthritic changes" to the plaintiff's knee. (AR. at 26.) After reviewing the

10

radiology report, Dr. Mael discussed the possibility of knee surgery with the plaintiff for the first time. (*See id.* at 644.)[6] The Court is not convinced that the deterioration evidenced by the report was the sort of "mild and gradual" change that would support continued reliance on outdated physicians' opinions. *Shelia M.*, 2021 WL 1784775 at *9 (collecting cases). Rather, it was more akin to a "significant and new development" warranting a renewed medical examination. *Moreno*, 882 F.3d at 728. The changes to the plaintiff's knee function conceivably affected her ability to remain on her feet and lift objects—both of which are relevant to performing her past work as an electric heat assembler. Because the changes were out of step with any previous findings of impairment in the plaintiff's knees, they necessitated "medical scrutiny." *Goins*, 764 F.3d at 680.

Instead of following up with Dr. Mael or ordering a new examination to account for the plaintiff's worsening condition, however, the ALJ relied on his own medical judgment and determined that "exacerbations" in the plaintiff's condition following June 2021 "were associated with the unavailability of sulfasalazine," a medication that the plaintiff was taking for her arthritis. (*See* AR at 26.) While the ALJ properly considered treatment notes indicating that the introduction of sulfasalazine was making "a significant difference," he erred in assuming that the deterioration of the

---

[6] While the record indicates that the plaintiff never actually received surgery for her knee, an ALJ may not draw inferences about a claimant's condition from her failure to seek treatment unless he has explored the claimant's explanations as to the lack of medical care. *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014). In a similar vein, the ALJ stated that there was "no evidence that [the plaintiff] received an injection" to relieve her knee pain, (AR. at 26), but the plaintiff testified during the administrative hearing that she had received a shot in October 2021. (*Id.* at 44.) The ALJ did not address this testimony.

11

plaintiff's condition was *caused* by an absence of the medication (as opposed to an objective worsening of the plaintiff's osteoarthritis). Notably, neither of the state agency reports that the ALJ relied on evaluated the June 2021 radiology report or considered the effect of sulfasalazine on the plaintiff's degenerative knee condition. Nor did Dr. Mael draw a causal relationship between the plaintiff's knee pain and the availability of sulfasalazine. Rather, "the ALJ alone" performed this analysis. *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (reversing where ALJ impermissibly assessed an MRI report without the assistance of a medical expert).

Reviewing the October 2021 treatment notes reinforces the conclusion that the ALJ improperly "played doctor." As the ALJ pointed out, these notes indicate "stable arthritis," and that "sulfasalazine makes a significant difference." (AR at 649.) Read in context, however, these comments appear to refer to arthritis in the plaintiff's hands. (*See id.*) Under a separate subheading, titled "primary osteoarthritis of the right knee," the same notes indicate "moderate to severe arthritis of the right knee" and discuss the possibility of "a steroid injection" or "surgery [of] the knee" "if the pain does not improve." (*Id.* at 649–50.) The ALJ did not consider these comments in his written decision. Similarly, in evaluating the treatment notes for the plaintiff's February 2022 examination, the ALJ emphasized the absence of "effusion" and "nail pitting," (*id.* at 26), while ignoring notes that the plaintiff was "complaining of pain in [her] right knee," was "known to have severe degenerative arthritis," and "inquired regarding having knee surgery." (*Id.* at 612.)

12

"An ALJ cannot recite only the evidence that supports his conclusion while ignoring contrary evidence." *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016). Contrary to the ALJ's determination, the plaintiff's treatment notes do not establish a causal connection between the plaintiff's knee pain and the presence or absence of sulfasalazine. The ALJ was not entitled to construe the notes in a manner that suggested subsequent reports of pain were caused by a shortage of the drug. *See Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018) (holding that an ALJ impermissibly "played doctor" by misconstruing a doctor's opinion that surgery "might not be the best treatment option" as showing that the plaintiff's condition was not severe enough for surgery).[7]

The problem of the ALJ "playing doctor" is also apparent when considering his bases for discounting Dr. Mael's testimony. (AR at 31.) Although he was not obligated to give Dr. Mael's opinion controlling weight, the ALJ was nonetheless bound to consider the persuasiveness of the opinion by using multiple factors, including supportability, consistency, the relationship with the claimant, and specialization. 20 C.F.R. § 416.920c(b)(2). Supportability and consistency are the most salient factors and the only ones that an ALJ needs to consider for a decision to be affirmed. *Victor*

---

[7] In his response brief, the Commissioner points out that the ALJ "further limited the claimant's postural activities" "to fully account for [her] knee disorder." (AR at 27.) The fact that the ALJ added additional limitations to the RFC beyond those recommended by the state agency consultants, the Commissioner argues, is evidence that the ALJ gave "reasoned consideration . . . to the evidence." (R. 10 at 6 (quoting *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).) But without a medical expert opining on the effect of plaintiff's deteriorating knee condition, any limitations imposed by the ALJ were necessarily the product of guesswork. Moreover, because the ALJ did not specify which postural limitations related to the plaintiff's knee condition, he failed to create "a logical bridge" between the evidence and his conclusion. *Crowell*, 72 F.4th at 814.

*F. v. Kijakazi*, No. 22 C 1451, 2023 WL 2429357, at *3 (N.D. Ill. Mar. 9, 2023) (citing 20 C.F.R. § 404.1520c(b)(2)).

As to supportability, the ALJ found that Dr. Mael's testimony was not supported by medical records "showing that the claimant improved with her medication regimen and [that] exacerbations in symptoms were associated with a shortage of sulfasalazine." (AR at 31.) In other words, the ALJ based his conclusion that Dr. Mael's testimony was not persuasive on his own speculation that the shortage of sulfasalazine caused the plaintiff's worsening condition. This was an error.

As to consistency, the ALJ found that Dr. Mael's opinion was not consistent with clinical findings indicating normal range of motion, normal sensation and no mention of any assistive device use. Although the ALJ was entitled to rely on reports of "normal sensation" and "normal range of motion," the significant change in the plaintiff's condition in June 2021 required him to seek a secondary opinion rather than evaluating the significance of the clinical findings himself.

Given the evidence of an objective, severe deterioration in the plaintiff's condition in June 2021, it was reversible error for the ALJ not to subject claims to additional medical scrutiny and rely on his own medical judgment. *Stage*, 812 F.3d at 1125. A more developed record may reveal that the ALJ was correct in discounting Dr. Mael's opinions in favor of those of the state agency consultants. But because the ALJ failed to develop the record in the first instance, the Court reverses the ALJ's findings and remands the case for further proceedings.

## II.  THE PLAINTIFF'S CREDIBILITY

The plaintiff also argues that the ALJ improperly refused to credit her subjective reports of pain. (R. 8 at 2–4, 10–11.) To assess reports of pain, an ALJ must consider a claimant's credibility. The Court must give an ALJ's credibility findings "special, but not unlimited, deference." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). To evaluate credibility, an ALJ must consider a range of factors, including objective medical evidence, daily activities, "the location, duration, frequency, and intensity of pain or other symptoms," aggravating factors, medication and treatment. *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (internal quotations omitted). "[A]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." *Cole v. Colvin*, 831 F.3d 411, 416 (7th Cir. 2016) (quoting *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015)); *see also Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984))

In evaluating the plaintiff's credibility, the ALJ appropriately considered the conservative nature of the plaintiff's treatment. The record shows that the plaintiff did not undergo major surgery, and the most aggressive treatment she received consisted of medication and occasional injection. *Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022); *Michale H. v. Kijakazi*, No. 22 C 2446, 2023 WL 4473004, at *6 (N.D. Ill July 11, 2023) ("[I]t was entirely proper for the ALJ to consider Plaintiff's medication and conservative course of treatment when weighing his allegations of disabling limitations").

Nonetheless, in determining that the plaintiff's post-June 2021 reports of pain were not supported by objective medical evidence, the ALJ improperly relied on the conclusion that the absence of sulfasalazine was causing the pain. He also ignored reports of pain that in April 2019, February 2020, and October 2021 treatment notes. Once again, while an ALJ need not consider every piece of evidence in the record, he "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citation omitted); *Meuser*, 838 F.3d at 911. Because the ALJ's assessment of post-June 2021 treatment notes was not corroborated by a supporting medical opinion, the tendency to emphasize supporting evidence while ignoring other evidence is problematic.

The ALJ also did not appropriately consider the plaintiff's daily activities in evaluating her credibility. In assessing a claimant's alleged symptoms, an ALJ "is required to evaluate a claimant's activities of daily living and explain why the claimant's activities are inconsistent with her description of her symptoms." *Michelle M. L. v. Kijakazi*, No. 20 C 6793, 2022 WL 3297619, at *11 (N.D. Ill. Aug. 11, 2022) (citations omitted). The ALJ made no mention of the plaintiff's activities in his written decision, however. *Pamela P. v. O'Malley*, No. 23 C 3463, 2024 WL 342524, at *4 (N.D. Ill. Jan. 30, 2024) (reversing where the ALJ "completely failed to explicitly assess Plaintiff's daily activities at all, much less specifically explain any inconsistencies between Plaintiff's activities and reported symptoms").

16

In failing to address the plaintiff's daily activities, the ALJ "overlooked testimony that [the claimant] performed only very limited tasks—with great difficulty." *Stage*, 812 F.3d at 1126. The plaintiff testified during the administrative hearing that she needed help from her son to prepare meals and wash clothes "because I can't be standing up very long because of my knee." (AR at 45.) She also testified that she could not perform simple tasks like grocery shopping or putting on her pants due to her knee pain, and that she spent most of the day sitting down. (*Id.* at 45–47.) The ALJ did not mention any of this testimony. *See Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) (reversing agency finding where "[u]ncontested evidence not mentioned by the [ALJ]" showed that the claimant performed "chores with difficulty, and with the aid of her sister, a neighbor, and another woman.").

Finally, the ALJ improperly inferred that because the plaintiff submitted a March 2020 leave request citing the COVID-19 pandemic, she had the ability to work and her reports of debilitating impairment were not credible. (AR at 25–26.) The ALJ failed to mention that, prior to March 2020, the plaintiff had taken 12 weeks of unpaid leave under the Family and Medical Leave Act ("FMLA") due to her arthritis. (R. 8 at 9; *see also* AR at 376.) At the administrative hearing, when asked if she stopped working because she was afraid to catch COVID-19, the plaintiff responded that she took FMLA leave beginning in January 2020 because she "couldn't stand the pain" in her hands and knees. (AR at 47.)

While some of the above errors may have been harmless individually, in the aggregate, they constitute reversible error. *See McKinzey v. Astrue*, 641 F.3d 884, 892

17

(7th Cir. 2011) (explaining that error is harmless only if the Court is "convinced" that ALJ would reach same result on remand). In sum, the Court concludes that the ALJ's credibility determination was not based on substantial evidence insofar as it discounted the plaintiff's claims of pain based on the ALJ's own medical judgment, failed to consider the plaintiff's daily activities, and improperly drew inferences about the plaintiff's credibility. The Court reverses and remands for further proceedings consistent with this opinion.

### III. THE PLAINTIFF'S OBESITY

Finally, the plaintiff argues that the ALJ failed to include a "meaningful discussion" of the plaintiff's obesity in his written decision. (R. 8 at 5.) The record does not support this argument. Obesity is not a "standalone disabling impairment," and an ALJ need only consider its impact "when evaluating the severity of other impairments." *Stephens,* 888 F.3d at 328. Here, the ALJ properly considered the plaintiff's obesity in making his RFC determination. At step two of his disability analysis, the ALJ found that the plaintiff's obesity was a severe impairment. (AR at 23.) In the narrative section supporting his RFC finding, the ALJ explained that he considered plaintiff's obesity (noting "BMIs over 30, including 38.97 in November 2020") in combination with her other impairments and evaluated its significance in determining the plaintiff's postural and manipulative limitations. (*Id.* at 26.)

The plaintiff points to no medical opinion indicating that her obesity limited her further than the ALJ's assessment. *See Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022) (observing that the complainant bears burden of showing additional limitations are warranted). Additionally, the ALJ relied on the expert testimony of

18

Lammers and Jhaveri who each considered the plaintiff's weight and BMI when providing assessments of her work capacity. (AR at 57, 61, 65, 72–73.) The Seventh Circuit has held that an ALJ adequately accounts for obesity when he relies on the opinions of doctors who considered it. *Skarbek v. Barnhart,* 390 F.3d 500, 504 (7th Cir. 2004); *see also Prochaska v. Barnhart,* 454 F.3d 731, 738 (7th Cir. 2006). Because the narrative discussion of the ALJ's written decision amply addresses the plaintiff's obesity, the Court rejects the plaintiff's last contention of error.

## CONCLUSION

For the reasons stated in this Memorandum Opinion and Order, the Court grants the plaintiff's motion for summary judgment. Pursuant to 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion. The Clerk is directed to enter judgment in favor of the plaintiff and against Defendant Commissioner of Social Security. It is so ordered.

Date: July 18, 2024

JEREMY C. DANIEL
United States District Judge